**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BARRY BENSON, JR.,** : | |
| Plaintiff : | **CIVIL ACTION NO. 4:07-0353** |
| v. : | **(MCCLURE, D.J.)** |
| | **(MANNION, M.J.)** |
| **P. RUANE, J. HEMPERLY,** : | |
| **EUGENE HARRIS, and DAWN** | |
| **WOOLINGHAMLY,** : | |
| Defendants : | |

## REPORT AND RECOMMENDATION

Pending before the court is the defendants' motion for summary judgment. (Doc. No. 70). Upon review, it is recommended that the defendants' motion be granted.

By way of relevant background, the plaintiff filed the instant action on February 23, 2007, in which he alleges denial of proper medical treatment while housed at the Gaudenzia Siena House, a drug and alcohol treatment facility. (Doc. No. 1). Upon preliminary review of the plaintiff's complaint, the court directed the plaintiff to file an amended complaint, (Doc. No. 19), and subsequently allowed the plaintiff to file a brief in support of his amended complaint, (Doc. No. 28).

On July 7, 2008, the defendants filed the instant motion for summary judgment, (Doc. No. 70), along with a statement of material facts, (Doc. No. 71). On July 16, 2008, the defendants filed a brief in support of their motion. (Doc. No. 72). After having been granted an extension of time, (Doc. No. 80), on March 3, 2009, the plaintiff filed a brief in opposition to the defendants' motion, (Doc. No. 84), along with supporting exhibits, (Doc. No. 85).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the

2

evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets their initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

With respect to the instant action, as the court has previously stated, in his amended complaint and supporting brief, the plaintiff alleges that he was denied proper medical treatment by the defendants, who are employed at the Gaudenzia Siena House. Apparently, the plaintiff was scheduled to undergo surgery on his back and legs[1] on December 27, 2006. He alleges, however, that the defendants interfered with his surgery. Specifically, with respect to defendant Ruane, the plaintiff alleges in his amended complaint that:

> Mrs. P. Ruane met with me in the nurses (sic) office and explain (sic) to me that I must cancelle (sic) my surgery on my back and leg's (sic) or they would place me back in prison or place me in a (sic) old folk home.

The following is alleged with respect to defendant Hemperly in the amended complaint:

> Mr. James Hemperly, then Refuse (sic) me the right to call my healthcare providers, my surgical (sic) or my family for about 2 ½ mths (sic) as he watch me daily in the most intensify (sic) pain, that bad, until sometimes it would cut my breathing off.

---

[1] The court notes that the plaintiff references problems with his kidney and liver in the relief section of his complaint. However, it would appear that his substantive claim is only based upon interference with the surgery for his back and legs.

With respect to defendant Harris, the plaintiff alleges in the amended complaint:

> Mr. Eugene Harris, he would have the nurse cancelle (sic) Biabete (sic) appointment's (sic) and tell me that he has to (sic) much work to get out or he'll tell me that they wasn't into community services or transportation to get me to my surgery specialist.

The plaintiff further alleges that defendant Harris:

> ". . . used his power's (sic) of deliberate of indifference to stop me from recieving (sic) medical help when he was inform (sic) on 11-9-06, from my doctor's that my surgery was of great important (sic) and a must that they have me at the surgery on 12-27-06. He, Mr. Eugene Harris, also met with me on 12-26-06 and also told me, that I must cancelle (sic) the surgery or go back to the institution and have the surgery.

Although the plaintiff does not set forth any allegations against defendant Woolingham in his amended complaint, in his brief, the plaintiff alleges that defendant Woolingham, along with defendants Ruane and Harris, met with him to discuss placing him in a nursing home or a "Hosp Home," or, in the alternative, putting him back in jail to have the surgery. Later, he alleges that these same defendants ordered him to sign a document and call his doctors to cancel the surgery.

The plaintiff further claims in his brief that, at one point, his surgery was rescheduled until February 8, 2007, but that he was, once again, made to cancel the surgery. Although he was made to cancel his surgery, the plaintiff alleges that accommodations were made for two other individuals to undergo surgery.

The plaintiff alleges that the actions of each of the defendants constituted deliberate indifference to his serious medical needs. He is seeking

4

compensatory and punitive damages.

Along with their motion for summary judgment, the defendants submitted a statement of material facts, the following of which are not in dispute[2]:

On June 10, 2004, the plaintiff was sentenced to one to five years in state prison[3]. The plaintiff served part of his time at SCI-Huntingdon. During his incarceration, the plaintiff began experiencing pain in his legs.

On or about February 22, 2006, by stipulation of parole, the plaintiff was released to the Gaudenzia Siena House Treatment Facility, ("Gaudenzia"),for treatment of his drug addiction. While at Gaudenzia, the plaintiff was given Ibuprofen for his leg pain. Further, while at Gaudenzia, the plaintiff was scheduled to have surgery on his back and legs on December 27, 2006, at the Harrisburg Hospital. The plaintiff claims that Gaudenzia staff were notified of the surgery on or about November 9, 2006.

The defendants' materials provide that the proposed surgery would have rendered the plaintiff bedridden for three to five months, and he would have been dependent on others for all of his medical care. As a result of this, Gaudenzia, which is simply a drug and alcohol treatment facility, and its staff gave the plaintiff the option of entering into a hospice or nursing home so that he could receive proper care after the surgery. The plaintiff refused to allow the defendants to place him in either.

---

[2]Contrary to L.R. 56.1, the plaintiff did not provide a response to the defendants' statement of material facts. Those facts are therefore deemed admitted.

[3]Record references are only provided where there is a factual dispute.

5

On December 26, 2006, the plaintiff signed a document indicating that he voluntarily cancelled the surgery scheduled for December 27, 2006. The plaintiff claims in his complaint that he was coerced into doing so. However, in his brief in opposition to the defendants' motion, the plaintiff states "I told [defendant Harris] that none of the issues were making any sense with my scheduled surgery being on 12-27-06.  After not having a home to go to, yes, it really made good sense to try and have it rescheduled." (Doc. No. 84, p. 2). The plaintiff's surgery was then rescheduled for February 8, 2007.

On January 25, 2007, the plaintiff found an apartment, but after a series of incidents unrelated to the defendants named herein, the plaintiff was unable to rent the apartment. The plaintiff's surgery was again cancelled.

The plaintiff is currently incarcerated at SCI-Huntingdon, where he has not yet received the surgery on his back.

In order to establish an Eighth Amendment claim based upon allegations of denial of proper medical care, an inmate must demonstrate a deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97 (1976). This standard requires both deliberate indifference on the part of the prison officials and a serious medical need on the part of the prisoner. See West v. Keve, 571 F.2d 158 (3d Cir. 1978).

A deliberate action is one which is intentional, requiring the actor to have knowledge of the events attributed to the injury and the ability to control the outcome.  "To establish a constitutional violation, the indifference must be deliberate and the actions intentional." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976).

6

A medical need is "serious" where it has been diagnosed by a physician as mandating treatment, or if it is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)), cert. denied, 500 U.S. 956 (1991).

The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional deprivation. Whitley v. Albers, 475 U.S. 312 (1986); Davidson v. Cannon, 474 U.S. 344 (1986). In Daniels v. Williams, 474 U.S. 327, 332 (1986), the Court noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. See generally Wilson v. Seiter, 501 U.S. 294 (1991).

In this case, the plaintiff has failed to provide sufficient evidence that the defendants were deliberately indifferent to his medical needs. At the time the plaintiff was admitted to Gaudenzia, he had an existing back and leg condition. The plaintiff, while undergoing drug treatment, was given Ibuprofen for his back and leg pain. The surgery for which the plaintiff was to undergo would require more post-operative treatment than Gaudenzia was able to provide as a drug and alcohol treatment facility. As a result, the plaintiff was given the option of entering either a hospice or nursing home facility, both of which he refused. His surgery for December 27, 2006, was cancelled, and

rescheduled to February 8, 2007, pending his attempt to get an apartment and leave the facility. The plaintiff was unable to secure an apartment, and his subsequent surgery was also cancelled. There is no indication from the record that the plaintiff's surgeries were rescheduled for anything but the best of reasons, as Gaudenzia did not have the facilities to care for the plaintiff post-surgery and he refused to go to a facility which could. To the extent that the plaintiff wished to undergo surgery, he simply would only needed to have agreed to relocate to a facility which could have accommodated him post-surgery. Therefore, the plaintiff has failed to establish that his failure to receive medical treatment was due to the deliberate indifference of the defendants.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendants' motion for summary judgment, **(Doc. No. 70)**, be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** March 5, 2009
O:\shared\REPORTS\2007 Reports\07-0353-02.wpd